# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BUTCHIE LONG, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS S. McGINLEY, | : | NO. 19-cv-3192 |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

**LYNNE A. SITARSKI**
**UNITED STATES MAGISTRATE JUDGE**                    **November 6, 2019**

Before the Court is a *pro se* Petition for Writ of Habeas Corpus filed pursuant to 28

U.S.C. § 2254 by Butchie Long ("Petitioner"), an individual currently incarcerated at the State

Correctional Institution – Coal Township, Pennsylvania.  This matter has been referred to me for

a Report and Recommendation.  For the following reasons, I respectfully recommend that the

petition for habeas corpus be stayed and held in abeyance until Petitioner's state court

proceedings have concluded.

## I.      BACKGROUND[1]

In Petitioner's direct appeal, the Superior Court provided the following recitation of the

facts:

> On the night of November 10, 2011, Rashan Gaffney, Ercel Butts-Stern, and some
> of their friends were at a store located on 57th and Walnut Street [in Philadelphia].

---

[1]  Respondents have submitted the relevant portions of the state court record ("SCR") in hard-copy format.  Documents contained in the SCR are indexed and numbered and will be cited as "SCR No. ___."  *Commonwealth v. Long*, No. CP-51-CR-0003619-2012, docket sheets available at https://ujsportal.pacourts.us/DocketSheets/CPReport.ashx?docketNumber=CP-51-CR-0003619-2012 (last visited Nov. 6, 2019).

An unidentified man came up to Gaffney and after they exchanged words, the man took a swing at Gaffney, but missed him.  Gaffney pulled out a gun and fired it at the ground, telling the man that they were not looking for any trouble. Gaffney and his friends left the store and walked towards 55th and Pine Streets. While they were walking, Gaffney noticed that people were following him.  In the area of Malcolm and Frazier Streets, two men started chasing and shooting at them from behind.  Butts-Stern was shot and fell to the ground at the corner of 57th and Willows Street while Gaffney hid under a car [35] to [50] feet north on 57th Street.  Gaffney saw [Petitioner], wearing a black and white hoodie, stand over Butts-Stern and shoot him in the head.  [Petitioner] then ran towards 57th and Whitby Streets.

On November 10, 2011, at around 6:30 p.m., Hazel Matthias and Tracie Hunter were traveling southbound on 57th Street when a group of four or five young men coming from the 5600 block of Hadfield Street ran in front of Matthias' car and headed west towards Willows Avenue.  Matthias and Hunter heard a loud pop and saw one of the young men, later identified as Butts-Stern, fall to the ground.  Both Matthias and Hunter testified that one of the men from the group then stood over Butts-Stern, who was lying in the street, and shot him again.  While neither Matthias nor Hunter identified [Petitioner], they both described the shooter as wearing a dark hoodie with a white stripe on it.

On November 10, 2011, at about 6:30 p.m., Ebony Mitchell was at her home [on] Hadfield Street when she heard gunshots.  When Mitchell walked to her door and looked outside she saw three men running near 57th Street and Hadfield Street. The first male, a heavy set African American with braids wearing an Adidas track jacket, was standing at a store located at 57th Street and Hadfield Street.  The second male, an African American wearing a red shirt and dark pants, was running north on 57th Street.  The third man, an African American with a little cut and wearing all dark clothes, was running south on 57th Street.  Mitchell found Butts-Stern shot and lying in the street and she sat with him until the police arrived.

On November 10, 2011, at approximately 6:39 p.m., when Police Officer Kevin Klein responded to the area of 57th and Willow Streets, he found Butts-Stern lying in the street.  Butts-Stern was immediately transported to the University of Pennsylvania Hospital, where he died at 6:57 p.m.  According to Dr. Edward Lieberman, the Assistant Medical Examiner for Philadelphia County, Butts-Stern suffered five gunshot wounds and blunt force trauma to the pelvis and hands. Butts-Stern suffered one shot to the top of the back of the head that exited the back, right side of the head; one shot to the left back, which hit a kidney and the vena cava, and exited through the liver; one shot to the left buttock that exited through the groin; and one shot that was a through and through to the outside of the pelvis.  All of the gunshot wounds were sustained from distance range.

2

From the area of 57th and Willows, officers recovered three nine-millimeter fired cartridge casings on 57th Street and three nine-millimeter fired cartridge casings from in front of 5662 Hadfield Street, 5652 Hadfield Street, and 5648 Hadfield Street, respectively.  According to Police Officer Ronald Weitman, an expert in firearms identification, all six nine-millimeter fired cartridge casings recovered from the area of 57th and Willows Streets were fired from the same firearm.

On November 22, 2011, Detective Thorsten Lucke recovered surveillance video comprising four different views from the MJ Mini-Market located at 5603 Market Street.  At about 5:02 p.m., the video shows [Petitioner] wearing a dark jacket with a white stripe enter and later exit the store.  The video shows a heavy set African American man with braids, later identified as Justin Swan, present at the store taking on the phone around the same time as [Petitioner].  At about 6:02 p.m., Butts-Stern and Gaffney arrive at the store.  At around 6:10 p.m., the video shows Gaffney pull out and shoot a firearm at the unidentified man in a red hoodie.  After the shooting, the video shows Gaffney and Butts-Stern cross over Walnut Street towards South Philadelphia.

On December 30, 2011, at 5:54 p.m., Gaffney gave a statement to police wherein he identified [Petitioner] from a still photo taken from the surveillance video from 56th and Walnut Streets as the man who shot Butts-Stern.  On March 21, 2012, Gaffney testified at a preliminary hearing and identified [Petitioner] as the shooter.  After failing to identify [Petitioner] at trial, Gaffney explained that he only identified [Petitioner] previously because the police showed him the surveillance video and he actually did not see the face of the man who shot Butts-Stern.

On January 19, 2012, at about 1:00 a.m., [Petitioner] was arrested inside a third-floor bedroom of 5612 Walnut Street.  During a subsequent search of the bedroom, officers recovered a Hoppe's Gun Cleaning Kit for a nine-millimeter size gun and various identification cards for [Petitioner].

*Commonwealth v. Long*, 1793 EDA 2013 (Pa. Super. July 9, 2014).  On May 13, 2013,

Petitioner's jury trial commenced before the Honorable Barbara A. McDermott in the

Philadelphia Court of Common Pleas.  Crim. Docket at 8.  On May 17, 2013, the jury found

Petitioner guilty of first-degree murder and related firearm offenses.  Crim. Docket at 9.  Judge

McDermott imposed the mandatory sentence of life imprisonment without parole on the first-

degree murder conviction, and concurrent sentences of one to two years imprisonment for the

firearms offenses.  Crim. Docket at 4.  Petitioner filed a direct appeal which was denied; the

Superior Court affirmed the judgment of sentence on July 9, 2014. Crim. Docket at 11. On January 26, 2015, the Pennsylvania Supreme Court denied allowance of appeal. Crim. Docket at 15. On December 1, 2015, Petitioner filed a counseled petition for relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. Cons. Stat. §§ 9541, *et seq.* ("PCRA"). Crim. Docket at 12. After an amendment, several supplements, and a hearing, the PCRA court dismissed Petitioner's PCRA petition on November 26, 2016. Crim Docket at 12-13. The Superior Court affirmed the denial of PCRA relief on June 18, 2018. *Commonwealth v. Long*, No. 3691 EDA 2016 (Pa. Super. June 18, 2018). The Pennsylvania Supreme Court denied allowance of appeal on March 21, 2019. Crim. Docket at 14.

On March 22, 2019, Petitioner filed a second PCRA petition asserting another *Brady* violation relating to the suppression of potential exculpatory eyewitness testimony. Crim, Docket at 14. After counsel was appointed and an evidentiary hearing held, on September 24, 2019, the PCRA court dismissed Petitioner's petition. Crim. Docket at 14-15. That same day, Petitioner filed a notice of appeal in the Pennsylvania Superior Court. Crim. Docket at 15. Petitioner's case is currently pending before the Pennsylvania Superior Court.

On July 17, 2019,[2] Petitioner filed a *pro se* petition for writ of habeas corpus, raising the following claims for relief:

---

[2] Pennsylvania and federal courts employ the prisoner mailbox rule. *See Perry v. Diguglielmo*, 169 F. App'x 134, 136 n.3 (3d Cir. 2006) (citing *Commonwealth v. Little*, 716 A.2d 1287 (Pa. Super. Ct. 1998)); *Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998). Under this doctrine, a prisoner's *pro se* petition is deemed filed when delivered to prison officials for mailing. *See Burns*, 134 F.3d at 113; *Commonwealth v. Castro*, 766 A.2d 1283, 1287 (Pa. Super. Ct. 2001). Nevertheless, it is a prisoner's burden to prove that the doctrine applies by providing evidence of when the petition was placed within a prison mailbox or delivered to prison officials. *See Commonwealth v. Jones*, 700 A .2d 423, 426 (Pa. 1997); *Thomas v. Elash*, 781 A.2d 170, 176 (Pa. Super. Ct. 2001); *see also Council v. Nash*, 400 F. App'x 680, 682 (3d Cir. 2010). In this case, Petitioner certified that he gave his habeas petition to prison officials on July 17, 2019, and it will be deemed file on that date. (Hab. Pet. at 19, ECF No. 1).

4

>    (1) Detectives Suppressed Lidell Brightman's Exculpatory Non-
>        Identification of Butchie Long in violation of *Brady v. Maryland*, 373
>        U.S. 82 (1963);
>
>    (2) Trial counsel was ineffective for not interviewing or attempting to
>        interview Eric Green before trial;
>
>    (3) Trial counsel was ineffective for not presenting Delissa Griffin as a
>        defense witness at trial;
>
>    *(4)* Detectives suppressed Eric Green's statements to them in violation of
>        *Brady;*
>
>    (5) The cumulative impact of trial counsel's ineffectiveness and the
>        Commonwealth's *Brady* violations rendered Petitioner's trial
>        fundamentally unfair; and
>
>    (6) Trial counsel was ineffective for failing to timely inform Petitioner of
>        the Commonwealth's plea offer.

(Hab. Pet. ¶ 12, ECF No. 1).

The petition for writ of habeas corpus was assigned to the Honorable Wendy Beetlestone, who referred it to me for a Report and Recommendation. (Order, ECF No. 5). On July 31, 2019, Petitioner filed a motion to stay and abey his habeas corpus petition. (Pet'r's Mot. to Stay, ECF No. 4). On October 30, 2019, the Commonwealth responded that they had no objection to Petitioner's motion to stay and abey, and agreed that the motion should be granted. (Resp. to Mot. to Stay, ECF No. 9).

## II.     DISCUSSION

### A.     Legal Standards

The United States Supreme Court has expressly approved the use of stay-and-abeyance procedures in habeas corpus proceedings in "limited circumstances." *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Faced with a mixed habeas petition containing both exhausted and

unexhausted claims, the Supreme Court recognized the potential "risk of [petitioners] forever losing their opportunity for any federal review of their unexhausted claims," and allowed courts to "stay the petition and hold it in abeyance while the petitioner returns to state court to exhaust his previously unexhausted claims." *Id.* at 275. A district court may issue a stay where: (1) good cause exists for the petitioner's failure to exhaust his claims; (2) the unexhausted claims are potentially meritorious; and (3) the petitioner has not engaged in dilatory or abusive tactics. *Rhines*, 544 U.S. at 278; *Heleva v. Brooks*, 581 F.3d 187, 192 (3d Cir. 2009).

### B.     Analysis

Petitioner's habeas petition presents a claim mirroring the issue raised in his PCRA petition currently on appeal before the Pennsylvania Superior Court: that he is entitled to relief based on newly discovered evidence that was suppressed in violation of *Brady*, specifically exculpatory non-identification evidence offered by eyewitness, Lidell Brightman. (Hab. Pet. ¶ 12, ECF No. 1). Petitioner's petition also includes claims that were previously presented on collateral appeal, and thus, are exhausted. *Id.* Consequently, Petitioner's habeas petition is a "mixed" petition containing exhausted and unexhausted claims. *Rhines*, 544 U.S. at 275. Petitioner would be foreclosed from amending the instant petition to include this claim if the Court addressed his habeas petition at this time.[3]

---

[3]  The one-year statute of limitations for filing a petition for writ of habeas corpus started to run when Petitioner's conviction became final on April 27, 2015. *See* U.S. Sup. Ct. R. 13(1) (allowing 90 days to petition for certiorari); *Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012) (judgment becomes final when time for seeking direct review expires). Petitioner filed his first PCRA petition on December 1, 2015, 218 days into the limitations period. The limitations period was then tolled until March 21, 2019, when the Pennsylvania Supreme Court denied allowance of appeal. *See* U.S.C. 2244(d)(2) (properly filed postconviction petition tolls federal limitations period); *Lawrence v. Florida*, 549 U.S. 327, 352 (2007) (no statutory tolling during certiorari period on postconviction review). Petitioner filed his petition for writ of habeas corpus on July 17, 2019, a total of 336 days into the 365-day limitations period. Unless the state court finds Petitioner's second PCRA petition to be properly filed, the statute of limitations for filing a

Considering the *Rhines* factors and the circumstances discussed above, I conclude that a stay is warranted.  On the record now before me, it appears that Petitioner provides good cause for his failure to present his unexhausted claim in his first PCRA petition.  That petition was filed on December 1, 2015 and the *Brady* evidence upon which this claim is predicated was not discovered by Petitioner until April 6, 2017.  (Pet'r's Mot. to Stay at 7, ECF No. 4).  On the present record, I currently do not see any indication that Petitioner has engaged in abusive or dilatory tactics.  Finally, with respect to the remaining *Rhines* factor, Respondents do not presently contend that Petitioner's claims are plainly meritless.  Respondents agree that a stay is appropriate.  (Resp. to Motion to Stay, ECF No. 9).

Moreover, principles of comity and deference to the state courts support staying the instant proceedings.  A stay will allow state collateral review to be conducted prior to federal collateral review, a practical result that aligns with the principles underlying the AEDPA.  *See Rhines*, 544 U.S. at 276 (noting that a court should exercise its discretion to stay only when doing so would "be compatible with AEDPA's purposes"); *see also Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) (allowing state courts the first opportunity to pass upon federal constitutional claims furthers the policies of comity and federalism).

## III.    CONCLUSION

I recommend that Petitioner's Motion to Stay and Abey be granted, and the instant petition for writ of habeas corpus be stayed and held in abeyance until his state court proceedings conclude.  I also recommend that the stay be conditioned on Petitioner notifying the District

---

writ of habeas corpus would have expired if Petitioner had delayed filing his habeas petition until his state court matter concluded.  *See* U.S.C. 2244(d)(2).

Court within thirty days of the conclusion of his state court proceedings. At that time, Petitioner shall provide a written status report of his state court proceedings. *See Rhines*, 544 U.S. at 277 (a petition "should not be stayed indefinitely").

Therefore, I respectfully make the following:

## RECOMMENDATION

AND NOW, this __6TH__ day of November, 2019, I respectfully RECOMMEND that the petition for writ of habeas corpus be STAYED and HELD IN ABEYANCE while Petitioner litigates his PCRA petition in the state courts.  It is FURTHER RECOMMENDED that the District Court direct Petitioner to notify the District Court within thirty days of the conclusion of his state court proceedings.  At that time, Petitioner shall provide a written status report detailing the conclusion of his state court exhaustion efforts.

Petitioner may file objections to this Report and Recommendation.  *See* Local Civ. Rule 72.1.  Failure to file timely objections may constitute a waiver of any appellate rights.


BY THE COURT:


___/s/ Lynne A. Sitarski_____
LYNNE A. SITARSKI
United States Magistrate Judge