# <u>Exhibit 1</u>

# Proposed

# *Amended Petition for a Writ of Habeas Corpus*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

_____
                                            :
Butchie Long,                               :
                                            :
                    Petitioner,             :                19-cv-3192
                                            :
            v.                              :          Habeas Corpus Action
                                            :
Tom McGinley, Superintendent,               :          Hon. Wendy Beetlestone
State Correctional Institution at           :     Magistrate Judge Lynne A. Sitarski
Coal Township,                              :
                                            :
                    Respondent.             :
_____:


### PETITIONER'S AMENDED PETITION
### FOR A WRIT OF HABEAS CORPUS

Karl Schwartz
Katherine Ernst
Wiseman & Schwartz, LLP
718 Arch Street, Suite 702 North
Philadelphia, PA 19106
215-450-3391
schwartz@wisemanschwartz.com

Counsel for Petitioner
Butchie Long

Date:  March 5, 2021

## Table of Contents

Preliminary Statement ........................................................................ 1

Parties ................................................................................................. 3

Procedural History ............................................................................. 3

The Anti-Terrorism and Effective Death Penalty Act .................................... 4

This Amended Petition is Timely Under the Antiterrorism and Effective
Death Penalty Act .............................................................................. 5

Statement Regarding Exhaustion & Default ................................................ 6

Claim I ................................................................................................. 8

Claim II ............................................................................................... 14

Claim III .............................................................................................. 17

Claim IV .............................................................................................. 19

Claim V ............................................................................................... 21

Claim VI .............................................................................................. 22

Request for Relief ............................................................................... 24

## PRELIMINARY STATEMENT

On July 22, 2019, Petitioner, Butchie Long filed his *pro se Petition for Writ of Habeas Corpus* (Doc. 1). Nine (9) days later, on July 31, 2019, he filed a *Motion for Stay and Abeyance* (Doc. 4), seeking to return to state court to exhaust an unexhausted claim. In its *Response to Motion to Stay Petition* (Doc. 9), the Commonwealth indicated its consent to the Stay Motion. On November 7, 2020, Magistrate Judge Sitarski issued her *Report and Recommendation* that Petitioner's *Motion* be granted (Doc. 11). On December 3, 2019, this Court approved and adopted the Magistrate Judge's *Report and Recommendation* (Doc. 14).

Petitioner returned to state court and, following an evidentiary hearing, he was denied PCRA relief in the Court of Common Pleas. On July 28, 2020, the Superior Court affirmed (No. 2770 EDA 2019), and on November 19, 2020, the Pennsylvania Supreme Court dismissed Petitioner's petition for allowance of appeal (153 ET 2020).

After having returned to federal court, Petitioner now files his *Amended Petition for a Writ of Habeas Corpus*. This is a fact petition. Consistent with the instructions on this Court's Habeas form, except where necessary for identifying bases for a ground for relief, Petitioner does not discuss or cite legal authority. He does not here engage in an AEDPA analysis, and thus does not address why the state court decisions on the exhausted claims satisfy 28 U.S.C. § 2254(d) (1) and/or (2)

and/or why he is entitled to *de novo* review of unexhausted claims. He is prepared to do so in subsequent briefing, and has filed this date a *Motion for Permission to File a Brief in Support of Petitioner's Amended Habeas Petition or, in the Alternative, a Motion for Stay and Abeyance,*[1] in which he requests 60 days to file the brief or motion in advance of any responsive pleading from the Commonwealth.

This *Amended Petition* amplifies four claims asserted in the *pro se* Petition: *Brady* and IAC claims involving witness Eric Green, an ineffectiveness claim regarding Delissa Griffin, and a cumulative error claim. Petitioner incorporates the entirety of the prior iterations of these claims as set forth in Petitioner's *pro se* Petition (Doc. 1). This *Amended Petition* also adds two additional claims, a *Brady/Napue* claim discovered this week, and addressed to the Commonwealth's misrepresentation regarding the nature of the immunity provided to the Commonwealth's critical identification witness, Rashan Gaffney; and an ineffectiveness claim regarding trial counsel's failure to request an interested witness/corrupt source instruction.

This *Amended Petition* cites transcripts of the state court proceedings by the date of the proceeding, followed by "Tr." and the page number.

---

[1] *See* Claim I, *infra,* regarding Petitioner's discovery, this week, of a *Brady/Napue* claim that may require exhaustion.

2

## PARTIES

Petitioner, Butchie Long, is a prisoner in the custody of the Pennsylvania Department of Corrections. He is currently incarcerated at the State Correctional Institution at Coal Township, in Coal Township, Pennsylvania, prisoner number LA3932. LB 4769. Tom McGinley is the Superintendent of the State Correctional Institution at Coal Township. As such, he has immediate control over Petitioner's custody.

## PROCEDURAL HISTORY

On May 17, 2013, Petitioner was convicted by a Common Pleas Court jury of First-Degree Murder and related offenses. CP-51-CR-0003619-2012. He was sentenced that same day to life in prison without parole, with concurrent sentences on firearms and possession of instrument of crime offenses. On July 9, 2014, the Pennsylvania Superior Court affirmed, No. 1793 EDA 2013, and on January 26, 2015, the Pennsylvania Supreme Court dismissed Petitioner's petition for allowance of appeal.  No. 416 EAL 2014. Petitioner was represented by Eugene Tinari, Esq. at trial and on direct review.

On December 1, 2015, Petitioner filed a PCRA petition. Amendments and Supplements were filed, and on November 21, 2016, the Common Pleas Court dismissed Petitioner's PCRA petition. CP-51-CR-0003619-2012. On June 18, 2018, the Superior Court affirmed. No. 3691 EDA 2016. On February 20, 2019, the

Pennsylvania Supreme Court dismissed Petitioner's petition for allowance of appeal. 471 EA 2018. Petitioner was represented through all of the state PCRA proceedings by Craig Cooley, Esq.

On July 22, 2019, Petitioner filed his *pro se Petition for Writ of Habeas Corpus* (Doc. 1). On July 31, 2019, he filed his *pro se Motion for Stay-and-Abeyance,* to permit exhaustion in state court, of an unexhausted claim. The Commonwealth filed its *Response in Support of Petitioner's Motion to Stay* (Doc. 9), and this Court granted the Motion on December 3, 2019 (Doc. 14).

Petitioner returned to state court, and on March 22, 2019, filed his PCRA petition containing the unexhausted claim. An evidentiary hearing was held, and on September 24, 2019, the Common Pleas Court dismissed the petition. CP-51-CR-0003619-2012. On July 28, 2020, the Superior Court affirmed. No. 2770 EDA 2019, and on November 19, 2020, the Pennsylvania Supreme Court dismissed Petitioner's petition for allowance of appeal. 153 ET 2020. Petitioner was represented through the entirety of these PCRA proceedings by George S. Yacoubian, Jr., Esq.[2]

## THE ANTI-TERRORISM AND EFFECTIVE DEATH PENALTY ACT

The Anti-Terrorism and Effective Death Penalty Act (AEDPA) applies to this case. As to some grounds, AEDPA deference under 28 U.S.C. §2254(d)(1) & (2),

---

[2] Petitioner will not reassert in federal habeas, this now-exhausted claim, that was denied in state court.

4

applies. As to other grounds, *de novo* review is required. Petitioner will address these points in his to-be-filed *Brief in Support*. For now, counsel asserts that the he is entitled to relief under either *de novo* review, or with the application of AEDPA deference, because his rights under the United States Constitution were violated and the state court decisions were either contrary to or involved an unreasonable application of United States Supreme Court precedent, and/or were based on an unreasonable determination of the facts in light of the state court record.

## THIS AMENDED PETITION IS TIMELY UNDER THE ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT

28 U.S.C. § 2244(d)(1) imposes a one-year limitations period for filing a petition. In applicable part, the one-year commences at the conclusion of direct review, "or the expiration of the time for seeking such review."

On direct review, the Pennsylvania Supreme Court dismissed Petitioner's petition for allowance of appeal on January 26, 2015. Petitioner did not seek review in the United States Supreme Court. Thus, the "expiration of the time for seeking such review" expired 90 days later, on April 27, 2015, when Petitioner's time to seek certiorari review in the United States Supreme Court expired.

A properly filed state post-conviction petition tolls the AEDPA limitations period. 28 U.S.C. § 2244(d)(2). Petitioner properly filed just such a petition on December 1, 2015. By December 1, 2015, Petitioner had used 218 days of AEDPA's one-year limitations period.

The limitations period remained tolled until February 20, 2019, when the Pennsylvania Supreme Court denied Petitioner's petition for allowance of appeal pertaining to his first PCRA. After February 20, 2019, 30 additional days expired for federal statute of limitations purposes, until March 22, 2020, when Petitioner filed his second PCRA petition. The March 22, 2020 filing again tolled the statute, since the Superior Court ultimately found the second petition to have been "properly filed."[3] With the additional 30 days, Petitioner had now expended 248 days of the statute of limitations period. The second tolling period continued until November 19, 2020, when the Pennsylvania Supreme Court dismissed Petitioner's petition for allowance of appeal (153 ET 2020). At that point Petitioner had 117 days remaining on the statute, leaving an expiration date on the statue of March 16, 2021. This Amended Petition, filed on March 5, 2021, is filed within the federal limitations period.

### STATEMENT REGARDING EXHAUSTION & DEFAULT

Four of the six claims for relief presented in this Amended Petition – ineffectiveness for failing to call Delissa Griffin; ineffectiveness for failing to call Eric Green; a *Brady* violation for suppression of the Green statement; and a cumulative error claim – were fairly presented to the Pennsylvania courts and are exhausted.

---

[3] *Commonwealth v. Long,* 2020 Pa. Super. Unpub. LEXIS 2381 at *8 (Pa. July 28, 2020)

A fifth claim, trial counsel's ineffectiveness for failing to request an interested witness/corrupt source instruction, was not presented to the state courts. This was due to the ineffective failure of initial state post-conviction counsel to do so. Petitioner can overcome any procedural bar raised by the Commonwealth, due to state post-conviction counsel's ineffectiveness. *See Martinez v. Ryan*, 566 U.S. 1 (2012). Petitioner submits that there is no longer an available remedy to exhaust this claim and therefore the claim is arguably procedurally defaulted. Should Respondents raise the affirmative defense of procedural bar, Petitioner will show how initial PCRA's counsel's ineffectiveness provides cause to overcome any asserted default.

A sixth claim (Claim I below), asserting the Commonwealth's violation of *Napue* and *Brady,* for failing to disclose the true nature of the immunity offered to the single identifying witness, Rashan Gaffney, and for misrepresenting to the jury the nature of that immunity, was not exhausted in state court. Petitioner can establish "cause" for the failure to exhaust. Up until March 2, 2021, the Commonwealth suppressed the *Brady* material giving rise to these *Brady* and *Napue* claims. There may be a vehicle in state court through the PCRA statute to exhaust this claim, and Petitioner will make inquiry of the Commonwealth to determine if it will choose to waive exhaustion. Otherwise, Petitioner will likely request permission from this Court to return to state court to exhaust the claim.

## CLAIM I

### THE COMMONWEALTH VIOLATED PETITIONER'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT, AND THE PRINCIPLES OF *NAPUE* AND *BRADY*, BY SUPPRESSING, AND BY AFFIRMATIVELY MISREPRESENTING, THE NATURE OF THE IMMUNITY OFFERED TO RASHAN GAFFNEY

The Commonwealth violated Petitioner's right to due process under the Fourteenth Amendment, and the principles of *Napue v. Illinois,* 360 U.S. 264 (1959) and *Brady v. Maryland,* 373 U.S. 83 (1963), by suppressing, and by affirmatively misrepresenting to the trial court and jury, the nature of the immunity offered to Rashan Gaffney.

The incident in this case involved an altercation between two groups of young men, on the public street, in West Philadelphia. The altercation culminated in a shooting in which one of the young men was killed. The Commonwealth alleged that Petitioner was the killer, and charged him with murder.

There was only one alleged identification witness who testified at trial, Rashan Gaffney. 5/17/13 Tr. 145-256. In his direct testimony, while acknowledging he was present at the incident, Gaffney insisted that he could not identify the shooter. 5/14/13 Tr. At 164. In light of Gaffney's trial testimony, the Commonwealth introduced Gaffney's preliminary hearing testimony, during which he had identified Petitioner as the shooter. *Id.*, 182-87. The Commonwealth did so under Pennsylvania precedent that permits prior inconsistent testimony to be considered substantively,

8

*Commonwealth v. Lively,* 610 A.2d 7 (1992) and *Commonwealth v. Brady,* 507 A.2d 66 (1986). Thus, the only "testimony" at Petitioner's trial identifying Petitioner as the shooter was Gaffney's preliminary hearing testimony.[4]

Gaffney had – by his own admission – pulled out a gun and shot it twice during the course of the incident that led to Petitioner's arrest. 5/14/13 Tr. 149-153. In fact, Gaffney was captured doing so on video, from a street camera. 5/14/13 Tr. 229. Gaffney was unlicensed to carry a gun, let alone fire one. Although Gaffney claimed he was only shooting at the ground, he admitted that he fired the gun because one of the young men from the other group threw a single punch at him, although the punch did not land. 5/14/13 Tr. 151. In a written statement to police, after his arrest approximately a month-and-a-half after the incident, Gaffney admitted to this criminal conduct, after waiving his *Miranda* rights.[5] A5.

In light of Gaffney's active criminal participation in the incident, the Commonwealth granted him immunity in advance of the preliminary hearing. A16-18. His preliminary hearing (and trial) testimony took place under that grant of immunity. The immunity agreement, introduced into evidence at the trial, explicitly cabined Gaffney's protection to "use" immunity. *Id.* Indeed, during the course of

---

[4] Gaffney had also allegedly identified Petitioner to police, when Gaffney was arrested several weeks after the incident.

[5] While Gaffney admitted to police that he shot once, he later disclosed, at trial, that he actually shot twice.

Gaffney's testimony, the prosecutor took pains to make clear to the jury that Gaffney's immunity protected him only against the use of his in-court testimony. 5/14/13 Tr. 242-43. This occurred when the trial judge announced to the jury that the Commonwealth "couldn't prosecute [Gaffney] for *his behavior*." *Id.* The prosecutor immediately corrected the trial judge, declaring that the immunity "was just for testimony." *Id.* Having been corrected, the trial judge then clarified and confirmed for the jury that the immunity "was just for testimony[, i]t was *just* use immunity." *Id.* The prosecutor stated "yes," and the trial judge then reconfirmed the point. *See id.* ("It was just for his testimony."). Thus, the jury was instructed no less than four (4) times that Gaffney was protected only from the use of his testimony.

As noted above, there was ample evidence, without Gaffney's immunized in-court testimony to prove him guilty of felony firearms charges, reckless endangerment, and quite possibly aggravated assault.[6] Thus, when the jurors received instructions – four times – that precluded the possibility that Gaffney's testimony was incentivized by a promise that he would not be prosecuted, they had no reason to doubt that he would be prosecuted irrespective of that use immunity. The prosecutor made certain of this.

---

[6] The Philadelphia District Attorney's Homicide Chief certainly entertained the possibility that Gaffney had been shooting at *someone*. *See* discussion of her email, below.

The written immunity agreement presented to the jury, and the prosecutor's representations regarding its terms were both false. What no one, other than the Commonwealth, knew was that Gaffney's immunity was not limited to use immunity. He had, in fact, received transactional immunity. The Commonwealth had decided, well before this matter went to trial, that Gaffney would not be arrested for this incident as long as he cooperated. Moreover, the assigned prosecutor, Bridgit Kirn, knew this, also well before trial.

On March 2, 2021, the Commonwealth permitted undersigned counsel to review its trial file. Within the file was a copy of an email from the Chief of the Homicide Unit, to Ms. (Bridget) Kirn, the trial prosecutor. The email is dated January 25, 2012, two months before the preliminary hearing. In the email, the Chief states in pertinent part:

> Bridget, [y]ou will need to immuniuze [*sic*] witness Rashan Gaffney. He had a gun earlier on in the incident and ***either fired it at a person or at the ground***. We needed him as a witness, so I did not approve an arrest. That position may change if he gives you a hard time.

A19. (emphasis added).

An agreement, whether or not written, that protects that witness from prosecution for offenses relating to the incident, confers transactional immunity upon the witness. Based on the unambiguous language in the memo discovered on March 2, 2021, that was the immunity provided to Gaffney. This was never disclosed to any of Petitioner's attorneys, and learned for the first time on March 2, 2021. The

fact of Gaffney's transactional immunity was quintessential *Brady* material that the Commonwealth was obliged to disclose in advance of trial. Separate and apart from this *Brady* violation, the prosecutor's false representation to the Court, counsel and the jury, that the immunity was "use" immunity only, and thus did not protect Gaffney from prosecution, violated due process, as established in *Napue* and its progeny.

In Petitioner's forthcoming *Brief in Support* of this *Amended Petition* he will fully address *Brady/Napue* materiality. For the purposes of this *Amended Petition*, Petitioner asserts that under either standard – i.e., whether a reasonable probability exists that had the true agreement been disclosed, the result of the trial would have been different (*Brady*); or whether the Commonwealth can demonstrate that the misrepresentation was harmless beyond a reasonable doubt (*Napue*) – he would prevail. This was a trial that hinged on the identification testimony (albeit from the preliminary hearing) of Rashan Gaffney. No other witness identified Petitioner as the shooter or for that matter, as having been involved in the shooting incident in any way. The prosecutor's misrepresentation to the jury was particularly prejudicial, since it came in response to, and flatly refuted, the trial court's suggestion that Gaffney's immunity meant that the Commonwealth "couldn't prosecute him for his behavior." In this way, the issue was spotlighted for the jury, a jury that knew there was ample evidence without the "use" immunity to prosecute and convict Gaffney.

Thus, Petitioner's jury was misled to believe that Gaffney was never incentivized by a guarantee that, as long as he cooperated, he would not be prosecuted. That is an enormous benefit, well beyond the reach of the "benefit" that was falsely represented to the jury. The benefit the jury heard about was really no benefit at all, since the Commonwealth had ample evidence to convict Gaffney without his self-incriminating testimony. There is a world of difference between offering "use" immunity to a witness where other evidence of his guilt is overwhelming, and promising that same witness that he will never be prosecuted for the offense. That difference informs the witness's incentive to testify consistent with the wishes of the Commonwealth. Petitioner had the right to have his jury informed of the breadth of the benefit given to Gaffney in exchange for his identification of Petitioner.

The writ should issue.

**Exhaustion**

This claim was not exhausted in state court. It was not discovered until March 2, 2021, and this delay in discovery was due completely to the Commonwealth's suppression of the true agreement, and all prior counsel's understandable reliance on the prosecutor's representation that the immunity was not "transactional," notwithstanding the fact that it was.

13

Petitioner will ascertain from the Commonwealth if it will waive exhaustion. If not, Petitioner avers that there is a state court avenue to raise this claim, 42 Pa.C.S. § 9545(b)(1)(i), and thus he is prepared to request that this Court stay the habeas proceeding so that he may exhaust the claim in state court.

## CLAIM II

### TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION FOR FAILING TO REQUEST THAT THE JURY BE GIVEN AN INTERESTED WITNESS/CORRUPT SOURCE CHARGE REGARDING THE WITNESS RASHAN GAFFNEY

Trial counsel was ineffective under the Sixth Amendment to the United States Constitution for failing to request that the jury be given an interested witness/corrupt source charge regarding the witness Rashan Gaffney.[7]

As discussed in Claim I, the Commonwealth's case against Petitioner relied heavily upon the immunized preliminary hearing testimony of Rashan Gaffney. Under Pennsylvania law, as well as pursuant to Petitioner's right to due process, a fair trial and confrontation under the federal constitution, Petitioner had the right to have his jury instructed that in light of Rashan Gaffney's admitted participation in the criminal incident, and in light of the benefit of immunity under which he testified,

---

[7] Petitioner incorporates by reference the facts presented in Claim I, particularly the manner in which the Commonwealth's sole eyewitness, Rashan Gaffney, was compromised by his admitted criminal conduct and grant of immunity.

he was an interested witness and potential corrupt source, whose testimony must be received with caution.

The jury should have been instructed that when a Commonwealth witness is a culpable party in the criminal incident, his testimony is to be judged by special precautionary rules, because experience shows that such a witness, when caught, may often try to place the blame falsely on someone else. The jury should also have been instructed that when the Commonwealth gives that very same witness favorable consideration for his testimony, the witness is further incentivized to testify consistent with the Commonwealth's theory. Such an instruction should have included the admonition that if the jury determined that the witness was involved in the crime charged – a finding that was incontrovertible in this case – then the jurors: may view the witness's testimony with disfavor because it comes from a corrupt and polluted source; should examine the testimony closely and accept it only with care and caution; and consider whether the testimony was supported, in whole or in part, by other evidence.

Trial counsel never requested such an instruction, or anything remotely resembling such an instruction. In failing to do so, he failed to act as the reasonably competent counsel envisaged by the Sixth Amendment.

As discussed in Claim I, and incorporated here, the Commonwealth's case relied heavily on witness Gaffney's prior recorded testimony. In the absence of an

instruction that obliged the jury to consider Gaffney's prior testimony with caution, the jury was provided with none of the necessary guidance that Pennsylvania and United States Constitutional law requires it be given, when faced with the incentivized testimony of an informant, who engaged in criminal activity during the course of the incident. Petitioner will fully develop his prejudice argument in his forthcoming *Brief in Support.* He notes here, however, that the undeniable facts that: (1) Gaffney's prior recorded testimony was the only testimony implicating Petitioner as the shooter; (2) Gaffney was a criminal participant in the incident, who shot a gun during the course of the incident; (3) Gaffney initially lied to police as to the number of times he shot his gun, during the course of the incident; (4) Gaffney was given immunity that turned out to be the broadest type the law permits; and (5) Gaffney wholly recanted his identification of Petitioner at trial. Petitioner readily establishes a reasonable likelihood that the result of the proceeding would have been different had counsel requested the appropriate instruction.

The writ should issue.

**Exhaustion**

This claim of trial counsel's ineffectiveness was not exhausted during state postconviction proceedings, as a result of postconviction counsel's ineffectiveness in failing to assert it. In light of the relevant PCRA provisions, an attempt to exhaust in state court at this stage would be futile. Pursuant to *Martinez v. Ryan,* 566 U.S. 1

(2012) and *Trevino v. Thaler,* 569 U.S. 413 (2013), Petitioner can establish postconviction counsel's ineffectiveness as "cause" to overcome any procedural default. He is entitled to *de novo* review of this claim, and will address this issue and provide the "cause" analysis, in his forthcoming *Brief in Support.*

### CLAIM III

**TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION FOR FAILING TO INVESTIGATE, INTERVIEW AND CALL ERIC GREEN AS A WITNESS; GREEN WOULD HAVE TESTIFIED THAT HE WITNESSED THE SHOOTING, AND THAT PETITIONER WAS NOT THE SHOOTER**

Trial counsel was ineffective under the Sixth Amendment for failing to investigate, interview and call Eric Green as a witness. Green would have testified that he witnessed the shooting, and that Petitioner was not the shooter.

When Philadelphia police detectives interviewed Rashan Gaffney, he informed them that he was present at the scene of the shooting, and that Eric Green was present as well. A5-6. Trial counsel received Gaffney's statement well before trial, and knew that Gaffney placed Green at the scene of the shooting.

Trial counsel failed to perform as the reasonably competent advocate guaranteed by the Sixth Amendment, when he failed to interview Eric Green and call him as a witness. Eric Green testified during state postconviction proceedings. 11/18/16 Tr. 28-48. Green was with the group of young men who engaged in the altercation with the group that included the person who shot the decedent. *Id.,* 30-

34. Green knew Petitioner from going to school with him at Delaware Valley High School. *Id.,* 34. He testified that he saw the shooter's face during the incident, and Petitioner was not the shooter. *Id.,* 34. Yet, by trial counsel's own admission, he never sought to interview Eric Green. 11/21/16 Tr. 181.

By failing to even attempt to interview Eric Green, trial counsel failed to perform as the reasonably competent advocate guaranteed by the Sixth Amendment, and his failure prejudiced Petitioner. Petitioner will fully develop his prejudice argument in his forthcoming *Brief in Support.* For purposes of this fact petition he incorporates by reference his materiality and prejudice arguments set forth in Claims I and II, addressing the weakness of the Commonwealth's case, based as it was on the compromised and incentivized prior testimony of Rashan Gaffney. He also points out that Green's association with the group that was pitted against the victim's group would have only enhanced Green's credibility in the eyes of the jury. Faced with one witness who testified forthrightly that Petitioner was uninvolved in the incident, versus the compromised, incentivized cooperator, who recanted his identification at trial, there is a reasonable likelihood that the jury would have credited Green's testimony, which would have led to Petitioner's acquittal.

The writ should issue.

**Exhaustion**

This claim was fully exhausted in state court.

18

## CLAIM IV

### TRIAL COUNSEL WAS INEFFECTIVE UNDER THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION FOR FAILING TO INVESTIGATE, INTERVIEW AND CALL DELISSA GRIFFIN AS AN ALIBI WITNESS AT TRIAL

Trial counsel was ineffective under the Sixth Amendment to the United States Constitution for failing to investigate, interview and call Delissa Griffin as an alibi witness at trial.

At the time of the shooting incident, Petitioner was not at the crime scene, but rather in the company of Delissa Griffin, at her home at 1620 Ellsworth Street. 11/17/16 Tr. 80-86 (Griffin testimony at PCRA evidentiary hearing). When Petitioner first retained trial counsel, Eugene Tinari, in March of 2013, he informed trial counsel of this fact. 11/21/16 Tr. 19-21. Petitioner gave trial counsel Ms. Griffin's name and telephone number. *Id.,* 20; however, neither trial counsel nor anyone working on his behalf ever contacted Ms. Griffin, let alone interviewed her. *Id.,* 11/17/16 Tr. 88.

Prior to trial, however, Ms. Griffin had occasion to speak with trial counsel over the telephone. *Id.,* 87-88. This occurred when Petitioner's wife, who was with Ms. Griffin at that time, called trial counsel. *Id.,* 87. Petitioner's wife put Ms. Griffin on the phone. *Id.* At that time, Ms. Griffin informed trial counsel that she was with Petitioner at the time of the incident. *Id.* Ms. Griffin never heard from trial counsel again. *Id.,* 87-88.

19

Although she was not subpoenaed for trial, Ms. Griffin attended the trial. *Id.,* 88-89. Ms. Griffin approached trial counsel and informed him that she was present and prepared to testify as an alibi witness. *Id.,* 89. Trial counsel never called her. *Id.*

Trial counsel performed deficiently in failing to call, or even interview Ms. Griffin. Absent such an interview, he would have had no way of knowing her value to the defense, which was substantial. Petitioner will fully develop his prejudice argument in his forthcoming *Brief in Support.* For purposes of this fact petition he incorporates by reference his materiality and prejudice arguments set forth in Claims I through III above, addressing the weakness of the Commonwealth's case, reliant as it was on one compromised, incentivized witness. In contrast to the "baggage" that accompanied the single eyewitness Rashan Gaffney, Ms. Griffin brought none. Her testimony would have been bereft of the interest, incentivization, and inconsistencies of the single Commonwealth witness. But for trial counsel's failure to even engage with Ms. Griffin, there is a reasonable likelihood that the result of the trial would have been different.

The writ should issue.

**Exhaustion**

This claim was fully exhausted in state court.

## Claim V

### THE COMMONWEALTH VIOLATED PETITIONER'S RIGHT TO DUE PROCESS UNDER THE FOURTEENTH AMENDMENT AS EXPLICATED IN *BRADY V. MARYLAND,* BY FAILING TO REVEAL ERIC GREEN'S EXCULPATORY STATEMENT

The Commonwealth violated Petitioner's right to due process under the Fourteenth Amendment and *Brady v. Maryland,* by suppressing Eric Green's statement to police that he saw the gunman's face and knew that the gunman was not Petitioner. Petitioner incorporates by reference the factual averments set forth in Claim III, *supra.*

On December 30, 2011, Eric Green was brought into the Homicide Unit of the Philadelphia Police Department, and questioned by homicide detectives about the killing in this case. He told the detectives that he was present at the scene of the shooting and witnessed it. 11/18/16 Tr. 35-36 (post-conviction testimony of Eric Green). He was shown a photograph of Petitioner and told them that Petitioner was not the shooter. *Id.*

The Commonwealth never disclosed this *Brady* material to trial counsel. Petitioner establishes *Brady* materiality, i.e., a reasonable probability that had Green's statement been disclosed to trial counsel, the result of the trial would have been different. Petitioner will fully address materiality and prejudice in his forthcoming *Brief in Support.* For purposes of this fact petition, he incorporates by reference his materiality and prejudice arguments

21

set forth in Claims I through IV above, and notes that had any reasonably competent counsel having been made aware that Eric Green exculpated his client, would have, at the very least, interviewed Green. Green was a willing witness, and all counsel needed to do was request his presence at trial. As noted in Claim III above, since Green was aligned with the group of young men in conflict with the group that included the shooter, his testimony would have had far more indicia of reliability than the compromised and incentivized testimony of the interested witness, Rashan Gaffney.

The writ should issue.

**Exhaustion**

This claim was fully exhausted in state court.

## CLAIM VI

### PETITIONER IS ENTITLED TO RELIEF BECAUSE OF THE CUMULATIVE PREJUDICIAL EFFECT OF THE ERRORS IN THIS CASE.

Courts have long recognized that constitutional claims of error are to be considered cumulatively as well as individually, and that cumulative error or prejudice may provide a basis for relief whether or not the effect of individual errors warrants relief.

If the Court finds cumulative prejudice, it eliminates the need to analyze the individual prejudicial effect of each deficiency. Moreover, if the court finds itself in equipoise as to effect of these cumulative errors, such that it merely has grave doubt

as to the existence of prejudice, relief must be granted.

Here, there was cumulative error based on three separate due process violations, and three critical instances of ineffective assistance. These errors cumulatively so undermined the fairness of the trial that Petitioner's conviction and sentence must be overturned. Whatever their effects individually, these errors cumulatively created a reasonable probability but for the errors, Petitioner would not have been convicted.

## REQUEST FOR RELIEF

For all of the above reasons, and based upon the full record of this matter,

Petitioner, Butchie Long, requests that the Court provide the following relief:

A)    That Petitioner be granted such discovery as is necessary for full and fair resolution of the claims contained in this *Amended Petition*;

B)    That leave to amend this *Amended Petition*, if necessary, be granted;

C)    That an evidentiary hearing be conducted on all claims involving disputed issues of fact;

D)    That Respondents be Ordered to respond to this *Amended Petition*; and

E)    That Petitioner's convictions and sentence be vacated.

Respectfully Submitted:

*s/Karl Schwartz*

Karl Schwartz
Katherine Ernst
Wiseman & Schwartz, LLP
718 Arch Street, Suite 702 N
Philadelphia, PA 19106
(215) 360 – 3988
schwartz@wisemanschwartz.com
ernst@wisemanschwartz.com

Dated:    March 5, 2021
           Philadelphia, PA

## Certificate of Service

I, Karl Schwartz, hereby certify that a copy of the foregoing filing has been served this date through the court's ECF system upon ECF filer Laura Zipin, of the Philadelphia, District Attorney's Office.

*s/Karl Schwartz*

Karl Schwartz
March 5, 2021