IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BUTCHIE LONG, | : | CIVIL ACTION |
|    Petitioner, | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS MCGINLEY, et al., | : | No. 19-3192 |
|    Respondents. | : | |

**RESPONSE TO PETITION FOR A WRIT OF HABEAS CORPUS**

Butchie Long, the petitioner, is a Pennsylvania state prisoner who is serving a life sentence without parole for first-degree murder, carrying a firearm without a license, and possessing an instrument of crime. His conviction arose from the 2011 shooting death of Ercel Butts-Sterns.

A central issue in this case involves the difference between use immunity and transactional immunity. When the prosecution gives a witness <u>use</u> immunity, the witness can still be prosecuted for a crime they committed, but the prosecution cannot use the immunized testimony to convict them. When the prosecution gives a witness *transactional* immunity, the witness cannot be prosecuted for the immunized crime. Use immunity only immunizes testimony about a criminal act; transactional immunity immunizes the criminal act itself. Here, Rashan Gaffney, the prosecution's key eyewitness and the only witness who identified Long as the shooter, was given use immunity for his testimony. But Long now claims the prosecution actually gave Gaffney full transactional immunity and that it affirmatively misrepresented the nature of the agreement in court.

Before this Court is Long's counseled petition for federal habeas relief pursuant to 28 U.S.C. § 2254, raising six claims, including the claim that the

prosecution failed to disclose the nature of Gaffney's immunity agreement. While the record in relation to Long's other five claims appears fully developed, it is not yet fully developed as to the immunity claim. Because the existing record does not foreclose relief on the immunity claim, and because the claim if proven could entitle Long to habeas relief, an evidentiary hearing is warranted.

## BACKGROUND

**Factual and Procedural History.**

On November 10, 2011, Ercel Butts-Sterns was shot and killed. Witnesses saw a group of men running when one man, Butts-Sterns, fell. N.T. 5/14/13 at 41–45; 5/15/13 at 8. One of the men, wearing a blue or black hoodie with a white stripe, stood over Butts-Sterns and shot him. N.T. 5/14/13 at 43–45; 5/15/13 at 8–13.

A little more than an hour before the shooting, Long was at a convenience store nearby the scene of the shooting. N.T. 5/15/13 at 139. Surveillance footage showed him wearing a blue hoodie and black jacket with a white stripe. *Id.* at 129–30; 139. He left the store and he was not seen again on the surveillance footage *Id.* at 181–82. Approximately an hour after Long left the store, Rashan Gaffney, Butts-Sterns, and two other men entered and later exited the store. *Id.* at 136–38, 140. Gaffney testified, and the footage corroborated, that Gaffney interact with a fifth man outside the store, who attempted to strike Gaffney. *Id.* at 183–85; N.T. 5/14/13 at 150–51. Gaffney drew a gun and shot at the ground. N.T. 5/14/13 at 151–52. Gaffney, Butts-Sterns, and the other two friends then left. *Id.* at 152.

In a police statement given a month and a half after the shooting, Gaffney described being followed by two men after leaving the store. ECF No. 29-1 at 28. One of the men was wearing a black and white Nike jacket

2

and a hoodie. *Id.* Gaffney, Butts-Sterns, and their two friends began to run and were followed and shot at by the two men. *Id.* During the chase, Butts-Sterns fell and Gaffney hid. *Id.* at 29. The man in the black and white jacket then stood over Butts-Sterns and shot him. *Id.* Police showed Gaffney a photo array, and Gaffney identified a photo of Long as the man wearing the black and white jacket who shot Butts-Sterns. *Id.*

Gaffney also admitted in his statement to shooting a gun at the ground earlier in front of the store, consistent with the surveillance footage. *Id.* at 28.

At Long's preliminary hearing, Gaffney testified consistent with his statement, identified Long as one of the men chasing him and shooting, and stated that Long was the man who stood over Butts-Sterns after he fell and shot him. N.T. 3/21/12 at 11–16. Long also confirmed that the prosecution had given him use immunity for his testimony. *Id.* at 22.

At trial, Gaffney disavowed his identification of Long, maintaining that the rest of his testimony was true but that he had not identified Long as the shooter. N.T. 5/14/13 at 164–68. Instead, he claimed that, in his police statement, he identified Long as the man he saw in the store surveillance footage that police showed to him, and that his clothing was similar to the shooter's. *Id.* at 164, 171.

In closing, the prosecution relied heavily on Gaffney's testimony and preliminary-hearing identification. N.T. 5/16/13 at 77, 80–88, 92–98.

The jury convicted Long of first-degree murder, carrying a firearm without a license, and possessing an instrument of crime. He was sentenced to a mandatory term of life in prison without parole. The Pennsylvania Superior Court affirmed his judgment of sentence and the Pennsylvania Supreme Court denied allowance of appeal.

3

In 2015, Long filed a timely PCRA petition that resulted in an evidentiary hearing in 2016. Long did not raise a claim related to Gaffney's immunity at any point during the proceedings. Among other claims, Long did allege a *Brady* violation, claiming the prosecution suppressed an exculpatory non-identification by another witness, Eric Green. That claim among others unrelated to the present immunity claim were the subject of the evidentiary hearing. N.T. 11/21/16 at 231–35. Long also sought discovery in relation to the PCRA *Brady* claim, including review of the police and prosecution's files. But the Commonwealth opposed the motion and the PCRA court denied it. Exhibit A (Commonwealth's Motion to Dismiss); ECF No. 29-1 at 18–19. After the hearing, the PCRA court dismissed Long's petition and the Pennsylvania Superior Court upheld the ruling. *Commonwealth v. Long*, 3691 EDA 2016 (Pa. Super. June 18, 2018).

In 2019, Long filed a pro se petition for writ of habeas corpus with this Court. ECF No. 1. Long also filed a subsequent pro se PCRA petition in 2019, and this Court order the federal proceedings stayed while Long litigated his second PCRA. ECF No. 14. Again, Long did not raise a claim related to Gaffney's immunity. Long's PCRA did result in another evidentiary hearing, this time on the alleged after-discovered evidence of another witness's, Lidell Brightman, identification of an alternative suspect, and ineffectiveness of prior PCRA counsel. N.T. 9/24/19 at 8–10. After the hearing, the PCRA court dismissed the petition and the dismissal was affirmed on appeal. *Commonwealth v. Long*, 239 A.3d 105 (Pa. Super. 2020) (Table).

In 2020, Long's present counsel entered his appearance, ECF No. 15, and in 2021, the Commonwealth allowed counsel to review the prosecution's files. During that review, counsel discovered a copy of an email dated January 25, 2013 ("January 25 email") from then-Assistant Chief of the

4

Homicide Unit Edward Cameron to Assistant District Attorney Bridget Kirn. The email, which is central to the immunity claim now at issue, stated:

> Please assign this case to Bridget Kirn.. Bridget, this case has a history that is a little complicated. You will need to immuniuze (sic) witness Rashan Gaffney. He had a gun earlier on in the incident and either fired it at a person or at the ground. We need him as a witness, so I did not approve an arrest. That position may change if he gives you a hard time. There is a related murder wherein a relative of the decedent, Ben Stern killed someone in retaliation for this case.

ECF No. 29-1 at 36.

Long then filed a counseled amended habeas petition with this Court, ECF No. 29, raising the following six claims:

1. The Commonwealth violated Long's right to due process under the Fourteenth Amendment, and the principles of *Napue* and *Brady*, by suppressing and affirmatively misrepresenting the nature of the immunity offered to Rashan Gaffney;

2. Trial counsel was ineffective under the Sixth Amendment for failing to request an interested witness/corrupt source charge regarding Rashan Gaffney;

3. Trial counsel was ineffective under the Sixth Amendment for failing to investigate, interview, and call an alibi witness at trial;

4. Trial counsel was ineffective under the Sixth Amendment for failing to investigate, interview, and call a witness, Eric Green, who would have testified that he saw the shooting and that Long was not the shooter;

5

5. The Commonwealth violated *Brady* by failing to disclose Green's exculpatory statement; and

6. Long is entitled to relief based on the cumulative prejudicial effect of the errors.

## DISCUSSION

Long is entitled to an evidentiary hearing on his claim that the prosecution violated *Napue v. Illinois*, 360 U.S. 264 (1959), and *Brady v. Maryland*, 373 U.S. 83 (1963), by suppressing the nature of the immunity given to eyewitness Rashan Gaffney. The current record does not resolve whether Gaffney actually received transactional immunity rather than use immunity for his testimony, nor does it foreclose relief, so Long's claim warrants further evidentiary development.[1] Because Long's allegations are not foreclosed by the current record and, if proven, could entitle him to habeas relief, and because an evidentiary hearing is not barred by § 2254(e)(2), the Court should grant an evidentiary hearing on this claim.

**I.     If proven, Long's allegations may entitle him to habeas relief.**

Long alleges that the prosecution suppressed and affirmatively misrepresented the nature of the immunity offered to eyewitness Rashan Gaffney. Specifically, he claims that Gaffney was provided full transactional immunity for his testimony rather than use immunity. ECF No. 29 at 49–50.

The current record neither proves nor disproves that Gaffney was given transactional immunity for his testimony. It is undisputed that Gaffney illegally had a gun prior to the fatal shooting, that he drew the gun, and that

---

[1] Because the outcome of the evidentiary hearing could render Long's remaining five claims moot, Respondents do not address them in this filing. Respondents respectfully request the opportunity to brief the merits of those claims, if necessary, after the evidentiary hearing.

6

he fired it. Gaffney admitted to the shooting in his police statement and testimony, and the incident was recorded by a surveillance camera. ECF No. 29-1 at 28; N.T. 5/15/13 at 183–85; N.T. 5/14/13 at 150–52.

To support his claim, Long relies on the January 25 email to the assigned ADA Bridget Kirn that Gaffney would need to be immunized and that Cameron had not approved an arrest for Gaffney, but "[t]hat position may change if he gives you a hard time." ECF No. 29-1 at 36. The email was sent two months prior to Gaffney's testimony at Long's preliminary hearing.

On March 21, 2012, the day of the preliminary hearing, Gaffney was granted use immunity for his testimony. ECF No. 20-3 at 19–21. Gaffney acknowledged his use immunity at the preliminary hearing. N.T. 3/21/12 at 22. At trial, the prosecution emphasized that Gaffney was given only use immunity and not transactional immunity, correcting the trial court in the jury's presence when it told the jury that Gaffney had received full immunity. N.T. 5/14/13 at 242–43.

Gaffney was the only witness to identify Long as the shooter, making him a key witness for the prosecution. At the preliminary hearing, Gaffney identified Long as the shooter. N.T. 3/21/12 at 11–16. At trial, however, Gaffney recanted in part, testifying that he was not able to identify the shooter and that he had previously identified Long from surveillance footage as wearing clothing like the shooter. N.T. 5/14/13 at 164–68, 171. The prosecution then questioned Gaffney with and read into the record his police statement and preliminary hearing testimony identifying Long. *Id.* at 164–89.

In addition to the January 25 email, Long also now presents a declaration from his trial counsel, Eugene P. Tinari, stating that no agreement other than use immunity was ever disclosed. ECF No. 29-1 at 37. Tinari states that,

7

because "there was ample evidence independent of Gaffney's testimony to prove him guilty of felony firearms charges, reckless endangerment and quite possibly aggravated assault, there was little impeachment value to the use immunity granted to Gaffney." *Id.* at 38. Furthermore, Tinari asserts that in his closing, he argued the jury should credit Gaffney's trial testimony disavowing his previous identification of Long because his previous testimony was motivated by the hope that he would not be prosecuted. *Id.* at 38. Had he known Gaffney had transactional immunity, it would have strengthened Tinari's position and allowed him to argue that Gaffney's preliminary hearing testimony was motivated by a guarantee that he would not be prosecuted while his trial testimony was more credible because he risked prosecution for his disavowal of his most important piece of testimony—the identification of Long as the shooter. *Id.* at 38–39.

If Gaffney did receive full transactional immunity, the prosecution's failure to disclose the agreement may violate *Brady v. Maryland*, 373 U.S. 83 (1963). The prosecution is obligated to disclose favorable evidence to the defense. *Id.* at 87. This obligation requires disclosure of both exculpatory and impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972). A new trial is required where the suppressed evidence is material such that there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different. *Cone v. Bell*, 556 U.S. 449, 469–70 (2009). A reasonable probability of a different result is "shown when the government's evidentiary suppression undermines confidence in

8

the outcome of the trial." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) (internal quotation marks omitted).

Gaffney's preliminary-hearing identification testimony was a critical component of the prosecution's case, and, therefore, suppressed impeachment evidence could constitute a *Brady* violation. However, even assuming the January 25 email shows the prosecution had offered or intended to later offer Gaffney full immunity, it is unclear whether anything more than use immunity was ever communicated to Gaffney.

Similarly, the prosecution's misrepresentation of and failure to correct Gaffney's testimony about receiving use immunity could constitute a violation of *Napue v. Illinois*, 360 U.S. 264 (1959), if Gaffney did receive transactional immunity. To establish a *Napue* violation, Long would have to show that: (1) Gaffney committed perjury; (2) the prosecution knew or should have known the testimony was false; (3) the false testimony was not correct; and (4) there is a reasonable likelihood the false testimony could have affected the jury's judgment. *Haskell v. Superintendent Greene SCI*, 866 F.3d 139, 146 (3d Cir. 2017). Information regarding benefits a key witness received in exchange for testimony "poses a reasonable, and significant, likelihood of affecting the judgment of the jury." *Id.*

The existing record neither establishes nor forecloses whether Gaffney committed perjury. Again, even assuming the January 25 email demonstrated the prosecution's intent to only charge Gaffney if he failed to cooperate, it is unclear from the record whether that or anything other than use

immunity was communicated to Gaffney. If Gaffney was only ever informed he was receiving use immunity, then his testimony was not perjured and could not form the basis of a *Napue* violation.

## II.   An evidentiary hearing on this claim is not barred by § 2254(e)(2).

An evidentiary hearing on Long's first claim is not foreclosed by statute. Section 2254(e)(2) provides that, absent specified exceptions, federal courts may not hold an evidentiary hearing on a claim if the petitioner "failed to develop" the factual basis of the claim in state court. Such a failure to develop requires "lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel." *Lee v. Gunt*, 667 F.3d 397, 406 (3d Cir. 2012) (quoting *Williams v. Taylor*, 529 U.S. 420, 432 (2000)).

Long acknowledges that his first claim is not exhausted, but the Commonwealth affirmatively waives exhaustion. *See Orie v. Sec'y Pennsylvania Dep't of Corr.*, 940 F.3d 845, 854 (3d Cir. 2019) ("[A] state can waive exhaustion if it does so explicitly . . . . That waiver is valid even when lack of exhaustion would otherwise have barred the petitioner's claim."); *Sharrieff v. Cathel*, 574 F.3d 225, 229 (3d Cir. 2009) (holding that the state affirmatively waived its nonexhaustion defense and thus allowed the federal court to reach the merits of the claim).

The Commonwealth also does not contend that Long's failure to develop the claim in state court demonstrates a lack of diligence under § 2254(e)(2). Long's basis for his claim is the January 25 email, a piece of evidence that was not reasonably available to Long until he had already commenced litigation of his federal habeas petition. Long had sought discovery, including review of the police and prosecution's files, which the Commonwealth opposed and the PCRA court denied. Exhibit A (Commonwealth's Motion to Dismiss); ECF No. 29-1 at 18–19. It was only after the

Commonwealth allowed Long's counsel to review the prosecution's files in 2021 that the January 25 email was discovered, leading Long to raise the present claim. Thus, Long is not at fault for failing to develop the claim in state court. *See Thomas v. Varner*, 428 F.3 491, 498 (3d Cir. 2005) ("[A] person is not at fault when his diligent efforts to perform an act are thwarted, for example, by the conduct of another or by happenstance." (quoting *Williams*, 529 U.S. at 431–32)).

Because of the Commonwealth's ability to waive the defense of failure to exhaust, it is incumbent upon prosecutors to carefully consider whether and to what extent the reliance on this procedural bar advances justice. While the principles of federalism, comity, and finality that animate procedural defenses and the requirements of § 2254(e)(2) are important in this analysis, they are not the only considerations. *See* Explanatory Comment 1, Pa. R. Prof. Conduct 3.8 ("A prosecutor has the responsibility of a minister of justice and not simply that of an advocate."). Even in instances where the state has not affirmatively waived its defense, "it may be appropriate . . . to hold that the nonexhaustion defense has been waived in order to avoid unnecessary delay in granting relief that is plainly warranted." *Granberry v. Greer*, 481 U.S. 129, 135 (1987). Given the lengthy state proceedings Long has already undertaken, and that he was prevented by the Commonwealth's own opposition and the PCRA court's denial of his previous discovery request from discovering the factual basis for his present claim, the Commonwealth waives exhaustion to avoid further unnecessary delay.

•

While the Commonwealth concedes that Long is entitled to an evidentiary hearing on this claim, the concession is limited. The record, as supplemented by the hearing, may demonstrate that Gaffney was never offered

11

anything more than use immunity and that he in turn did not perjure himself on the stand. Therefore, the Commonwealth takes no position on the merits of his claim at this stage.

## CONCLUSION

For the foregoing reasons, the Commonwealth respectfully requests that the Court grant an evidentiary hearing on Long's first claim that the prosecution suppressed and affirmatively misrepresented evidence as to the nature of Gaffney's immunity.

Respectfully submitted,

*/s/ Shoshana D. Silverstein*
Shoshana D. Silverstein
Assistant District Attorney
Federal Litigation Unit

## CERTIFICATE OF SERVICE

      I certify that on May 5, 2022, a copy of this response was served on Petitioner's counsel at the following address via the court's electronic filing system:

> Karl David Schwartz
> Wiseman & Schwartz, LLP
> 718 Arch Street, Suite 702N
> Philadelphia, PA 19106

> /s/ *Shoshana D. Silverstein*
> Shoshana D. Silverstein
> Assistant District Attorney
> Federal Litigation Unit