IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| _____ | | |
| BUTCHIE LONG | : | 19-cv-3192 |
|      Long, | : | |
|   v. | : | HON. WENDY BEETLESTONE |
| | : | UNITED STATES DISTRICT JUDGE |
| THOMAS MCGINLEY, et al., | : | |
|      Respondents. | : | HON. LYNNE A. SITARSKI |
| | : | UNITED STATES MAGISTRATE JUDGE |
| | : | |
| _____ | | |

*FOURTH AMENDMENT TO LONG'S PETITION FOR A WRIT*
*OF HABEAS CORPUS & CONSOLIDATED MEMORANDUM OF LAW*

Karl Schwartz
Wiseman, Schwartz, Cioschi & Trama, LLP
718 Arch Street, Suite 701 North
Philadelphia, PA 19106
(215) 360-3988
schwartz@wisemanschwartz.com

Nilam A. Sanghvi
Clay Waterman
Jonah Rosenbaum
Pennsylvania Innocence Project
1515 Market Street, Ste. 300
Philadelphia, PA 19102
nilam.sanghvi@painnocence.org

Counsel for Butchie Long

Dated: May 2, 2025
Philadelphia, PA

## PRELIMINARY STATEMENT

Butchie Long, who is serving a life sentence without parole resulting from his conviction for first degree murder and related offenses, files this *Fourth Amendment to his Petition for Writ of Habeas Corpus.* This filing is intended to supplement, and not supersede, Long's previous filings.

Pursuant to Fed. R. Civ. P. 15(a)(2), this amendment is filed with the consent of the Respondents.

## INTRODUCTION

### Relevant Procedural History

The procedural history preceding this amendment was detailed most recently in Long's third amendment to the petition, filed October 21, 2024, and is incorporated by reference. *See* ECF No. 73. Since then, Long filed a Post Conviction Relief Act petition in the Philadelphia County Court of Common Pleas on March 3, 2025, asserting the same claims raised in Long's third amendment as well as the claims raised in this amendment. Long filed a motion to stay the state court proceeding pending the outcome of this petition on May 2, 2025.

Long hereby asserts two additional claims—Claims XI and XII—based upon information obtained from the witness Justin Swain's July 19, 2024 statement.

**Facts Supporting The Claims**

As set forth in Long's third amendment, Justin Swain witnessed the dispute between Rashan Gaffney and the unknown man in the red hoodie that took place 20 minutes before—and, per the Commonwealth's theory at trial, led directly to—the shooting death of Ercel Butts-Sterns.[1] Swain then provided information to Detectives Byard and Lucke that *exculpated* Long, most notably that he: (1) knew Long from the neighborhood; (2) saw Long at the market one hour before the Gaffney altercation occurred; (3) saw Long leave the market; and (4) then witnessed the altercation between Gaffney and the man in the red hoodie. *See* Swain Declaration ¶¶ 1-8 (attached to Third Am. Pet'n as A64). Swain told Byard and Lucke that Long *was not present when the altercation occurred. Id.* at ¶¶ 6, 8.

The Commonwealth possessed this vital and exculpatory information and suppressed it from Long's defense attorney. Indeed, the *only* mention of Swain turned over to defense counsel came in a police activity sheet that merely indicated that police spoke with Swain and that he provided information about some of the people in the surveillance video. *See* Nov. 28, 2011 Activity Sheet (attached to Third Am. Pet'n as A62).

---

[1] The Commonwealth theorized that the assailant followed Gaffney and Butts-Sterns from the scene of the dispute for about a mile before shooting Butts-Sterns. The Butts-Sterns shooting occurred 20 minutes after and over a mile away from the Gaffney altercation; therefore, logic dictated that the assailant must have been present at the Gaffney altercation and not in some other area.

At trial, the Commonwealth advanced the theory that Long was present during the altercation that occurred between Gaffney and the man in the red hoodie, which lent much needed credibility to its ultimate claim that Long was the shooter. The Commonwealth had scant evidence in support of this narrative and, indeed, surveillance footage captured Long leaving the market (and no footage captured Long returning). Because the Commonwealth possessed no affirmative evidence of Long's presence, trial prosecutor Bridget Kirn asked Gaffney whether he knew "*beyond doubt that* [Mr. Long] wasn't on the opposite side of the street?" Gaffney replied that he did not, keeping alive the possibility of Long's presence. NT 5/14/2013, 255 (emphasis added). During closing, Kirn emphasized the Commonwealth's belief that, despite no corroborative eyewitness testimony, Long was likely on the opposite side of the street during the confrontation, noting that he lived nearby and was in the store with before the altercation. NT 5/16/2013, 91-92, 102-03.

Further, at trial, Kirn lied to the jury, claiming that Swain made no statement to police. *See* NT 5/16/13, 91 (characterizing Detective Lucke's testimony as "I don't have a statement from him"). It was a fair characterization, since Lucke—who never revealed to the jury that police had met with and interviewed Swain, and that Swain had stated Long was not present for the Gaffney shooting—initially testified that he had "meetings" with Swain, but then immediately changed that

descriptor to "encounters." The latter descriptor allowed Kirn to assert that Swain made no statement to police. She then exploited the lie by suggesting that Swain's purported silence was particularly damning to Long, since – according to the prosecutor – Swain was his friend:

> Detective Lucke sat here. He told you: I brought in Justin Swain. I don't have a statement from him. So if he brings in the defendant's own friend and the defendant's friend doesn't want to say anything to him, what else can he do? That was evidence from the detective, so you don't sit here and say that the detectives didn't look for these guys. They know exactly who that is, but he's not talking.

*Id.* There was no evidence that Swain and Long were friends. It was an assertion made from whole cloth, to exploit a falsehood—that Swain did not speak to police.

Taken together, Detective Lucke's and prosecutor Kirn's testimony and argument left no doubt in the minds of the jurors that Swain conveyed no information to police, and that if he had anything other than inculpatory evidence to convey, he would have done so. But it was all a lie. Swain had conveyed powerfully exculpatory information, and it was left by the wayside and never disclosed. Because the Commonwealth failed to disclose Swain's exculpatory statements, then, because of this non-disclosure, Long's defense was unaware that the Commonwealth elicited false testimony regarding the substance of Swain's "encounters," with Detective Lucke.

## CLAIM XI

**The Commonwealth Violated Long's Fourteenth Amendment Due Process Guarantee by Suppressing Evidence That Swain Told Police That Long Was Not Present When the Altercation Between Gaffney and the Individual in the Red Hoodie Occurred**

A prosecutor's failure to disclose *Brady* material requires a new trial when the exculpatory evidence would have been material to the trial. *Kyles v. Whitley*, 514 U.S. 419, at 432 (1995); *see also Banks v. Dretke*, 540 U.S. 668, at 675-76 (2004). The prosecution's disclosure duty is not limited to information known to the trial prosecutor but, instead, encompasses all information in the possession of the prosecutor's office, police, and others responsible for or acting on behalf of the prosecutor's office. *Kyles*, 514 U.S. at 437, 482 ("prosecutor is responsible for any favorable evidence known to the others acting on the government's behalf in this case, including the police"; "prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf"); *Giglio v. United States*, 405 U.S. 150, at 154 (1972) ("prosecutor's office is an entity"; knowledge of anyone in office attributed to the trial prosecutor). Further, *Brady* analysis "focus[es] on disclosure by the prosecutor, not diligence by the defense." *Dennis v. Sec'y, Pennsylvania Dep't of Corr.*, 834 F.3d 263, 290 (3d Cir. 2016) (*en banc*).

A "showing of materiality does *not* require demonstration by a preponderance that disclosure of the suppressed evidence would have resulted ultimately in the defendant's acquittal." *Kyles*, 514 U.S. at 434 (emphasis added).

Instead, the "touchstone of materiality is a '*reasonable probability*' of a different result," which is "shown when the government's evidentiary suppression '*undermines confidence* in the outcome of the trial.'" *Id.* (emphasis added); *see also Hull v. Kyler*, 190 F.3d 88, 110 (3d Cir. 1999) (the "undermines confidence" standard "is not a stringent one. It is less demanding than the preponderance standard."). It is "not whether the defendant would more likely or not have received a different verdict with the [suppressed] evidence, but whether in its absence he received a fair trial. . . ." *Kyles*, 514 U.S. at 434.

In assessing materiality, the Court does not examine the impact of each piece of suppressed evidence. Rather, the impact of the suppressed exculpatory evidence is viewed cumulatively. *Id.* ("stressing" that materiality is considered "*collectively, not item by item*" (emphasis added)); *Dennis*, 834 F.3d at 360 (same). Moreover, the Supreme Court's recent decision in *Glossip v. Oklahoma* clarifies that the proper materiality analysis must consider *all* the evidence, "whether or not that evidence is before the Court in the form of an independent claim for relief." 145 S. Ct. 612, 629 (2025).

**The Swain Evidence Was Suppressed**

As noted above, a police activity sheet documented that the police spoke with Swain and that he provided information about some of the people in the surveillance video. *See* Nov. 28, 2011 Activity Sheet. That's it. The activity sheet

7

did not reveal nor provide notice that the information Swain provided exculpated

Long. Swain provided information that undid the motive evidence, and evidence of

presence, that was at the heart of the Commonwealth's theory, and it chose not to

disclose it, in violation of its duty under *Brady v. Maryland*, 373 U.S. 83 (1963),

and its progeny.

**The Suppressed Swain Evidence Was Favorable And Material**

Defense counsel argued throughout trial that Long left the area an hour

before the confrontation with Gaffney and the man in the red hoodie, making it

improbable, if not impossible, for Long to have been part of the group that chased

Gaffney directly from that location. In his opening statement, counsel asserted,

"[y]ou are going to see Butchie Long on that video, but what you are not going to

see is Butchie Long present at any time during the confrontation at 56th and

Walnut between Rashan Gaffney and some unknown individual that the

Commonwealth is characterizing as his friend." NT 5/14/2013, 36. Further, in his

closing statement, defense counsel stated: "The Commonwealth would have you

guess and be some type of, I guess, investigator and ask you to believe that he

[Long] was standing on the other side of the street when this shooting occurred

outside of the purview of the video cameras." NT 5/16/2013, 28. Defense counsel

further stated: "[The prosecutor's] argument was he and red hoodie are such good

friends that he took it upon himself to chase him a mile into Southwest Philly and execute Ercel." *Id.* at 18.

However, though defense counsel understood that the prosecution's case hinged on Long's presence when the confrontation involving Gaffney occurred, Long had no witnesses to support his claim that he was not. But if the Commonwealth had complied with its *Brady* obligation and disclosed what Swain told police, Long would have presented an impartial witness demonstrating he was not present when the inciting altercation with Gaffney occurred. Affirmative evidence that Long was not in the vicinity of the altercation with Gaffney would have resulted in a reasonable probability of a different result, especially considering the weakness of the Commonwealth's claim as to Long's presence— Gaffney's testimony that he couldn't say "beyond doubt" that Long was not there, *see* NT 5/14/2013, 255 —and of its overall case. Compliance with *Brady* would have foreclosed the Commonwealth from plausibly arguing to the jury that Long was present at the time of the altercation that the Commonwealth argued motivated the shooting in this case.  The suppression of the Swain evidence alone merits relief, but the impact of this *Brady* violation is magnified when considered together, against the backdrop of *all the evidence*, including the criminal exposure of key witness Gaffney, as it must be. *See Glossip*, 145 S.Ct. at 629.

## CLAIM XII

### The Commonwealth Violated Long's Right to Due Process Under the Fourteenth Amendment and the Rules of *Napue v. Illinois* and *Giglio v. United States* by Presenting and Eliciting False Evidence

"It has long been established that the prosecution's 'deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice.'" *Banks v. Dretke*, 540 U.S. 668, 694 (2004) (quoting *Giglio v. United States*, 405 U.S. 150, 153 (1972)). It is likewise well-settled that the prosecution is under a duty to correct any false, mistaken, or misleading testimony it elicits. *See generally Napue v. Illinois*, 360 U.S. 264 (1959). And the prosecution's disclosure duty is not limited to information known to the trial prosecutor but, instead, includes all information in the possession of the prosecutor's office, police, and others responsible for or acting on behalf of the prosecutor's office. *Kyles*, 514 U.S. at 437, 482.

**The Commonwealth Elicited and Presented False Evidence**

As noted above, during trial, Detective Lucke identified Justin Swain in the surveillance video depicting the altercation between Gaffney and the man in the red hoodie. He then testified that he knew who Swain was, knew he was at the scene and had several "encounters" with him. NT 5/15/2013, 135. But because Detective Lucke did not testify that any relevant information was communicated during these "encounters," defense counsel and the jury were led to believe that

10

Swain provided no information beneficial to Long about the altercation or the shooting.

This inference was made explicit during the Commonwealth's closing argument, when prosecutor Kirn assured the jury that Swain made no statement. It was then exploited when she argued that "[Detective Lucke] [brought] in the defendant's own friend and the defendant's friend doesn't want to say anything to him, what else can he do?" NT 5/16/2013, 91. Not only was there zero evidence to support the notion of this purported friendship, but her statement that Swain did not want to say anything was a lie—Swain communicated highly relevant information to Detective Lucke but, because the information exculpated, rather than inculpated Long, it was kept from his defense.

And, as noted above, Kirn's insistence that Long was present for the altercation between Gaffney and the man in the red hoodie constituted a further violation of the Commonwealth's obligations under *Napue* and *Giglio*. Kirn relied on Gaffney's admission that he could not say "*beyond doubt*" that Mr. Long was not present (on the opposite side of the street) when the inciting altercation occurred, NT 5/14/2013, 255 (emphasis added), to argue at length during her opening and closing statements that he was.[2] The Commonwealth knew that a

_____

[2] *See* NT 5/16/2013, 102 ("[T]here are lots of people outside during this incident. It's at 56th and Walnut. Lots of people; right? Rashan Gaffney said that there are a lot of

11

material witness *did tell police* that Long was not present, because Lucke knew to ask the question, and Swain answered it.

**The False Evidence was Material**

The materiality inquiry burdens *the beneficiary* of the *Napue* violation (here, the Commonwealth) with "prov[ing] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Glossip*, 145 S.Ct. at 631 (quoting *United States v. Bagley*, 473 U.S. 667, 680 n.9 (1985)). A new trial is warranted so long as the false evidence "may have had an effect on the outcome of the trial." *Napue*, 360 U.S. at 272. *Glossip* also makes clear that any prejudice analysis requires a "cumulative evaluation of all the evidence, whether or not that evidence is before the Court in the form of an independent claim for relief." *Id.* at 629.

It is the Commonwealth's burden to prove that the violation did not contribute to the verdict, and it must do so against the backdrop of its trial prosecutor's decision to repeatedly emphasize the significance of (what is now

---

people that are across the street, and as he sat here today, he can't say that the defendant wasn't one of those people. In fact, the last that you see the defendant is going towards his house."); *see also id.* at 102-03 ("Stop it with this nonsense of, oh, well, he's not there because the video doesn't show it. It would be like if you came in and you took, like on Court TV, but we don't have that here in Pennsylvania, where they set up a camera in the courtroom. When they do, they set up the camera to go and look directly at the witness. . . . they don't show the jurors. Does that mean that the jurors aren't present?").

properly understood as) the Commonwealth's *Brady* and *Napue* violations. First, Kirn deceived the jury into believing it was possible that Long was present during the altercation between Gaffney and the man in the red hoodie. This deception would have been impossible if the prosecution had disclosed Swain's exculpatory statements, *see* Claim XI, *supra*, and the Commonwealth then compounded its *Brady* violation when, in violation of *Napue*, it elicited testimony and made argument it knew to be untrue—namely that Long was present when the altercation occurred and no one, even Long's imagined "friend," could say otherwise. This violated *Napue* both because Swain *did talk to police* and because, in so doing, he exculpated Long.

As in *Glossip*, the prejudice of that deception is underscored by the fact that the "theory" built upon it "was an important part of the prosecution's case and featured prominently in its" arguments to the jury. *Glossip*, 145 S.Ct. at 628. The impact of this *Napue* violation is magnified when considered together, against the backdrop of *all of the evidence*, including the criminal exposure of key witness Gaffney, as it must be. *See id.* at 629; *see also* Third Am. Pet'n, Claim X.

## AMENDMENT

Pursuant to Fed. R. Civ. P. 15(a)(2) this Amendment is filed with the consent of the Respondents. This claim is timely under 28 U.S.C. § 2244(d)(1)(B) because it was filed within one year of the removal of a state-created

impediment—the Commonwealth's unconstitutional suppression of exculpatory evidence—which was discovered through a witness statement obtained on July 19, 2024 and had previously prevented the petitioner from filing.

## CONCLUSION

For all the above reasons, and based upon the full record of this matter, Petitioner, Butchie Long, requests that the Court vacate Long's convictions and sentence.

Respectfully Submitted,

*/s/ Karl Schwartz*
Wiseman, Schwartz, Cioschi & Trama, LLP
718 Arch Street, Suite 701 North
Philadelphia, PA 19106
(215) 360-3988
schwartz@wisemanschwartz.com

*/s/ Nilam A. Sanghvi*
Nilam A. Sanghvi
Clay Waterman
Jonah Rosenbaum
Pennsylvania Innocence Project
1515 Market Street, Ste. 300
Philadelphia, PA 19102

Counsel for Petitioner
Butchie Long

Dated: May 2, 2025
Philadelphia, PA

**Certificate of Service**

I, Nilam A. Sanghvi, hereby certify that on this 2nd day of May 2025, I served the foregoing upon all counsel of record via the ECF system.

*/s/ Nilam A. Sanghvi*
Nilam A. Sanghvi